<u>**FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

**DISPLAY WORKS, LLC,**

    *Plaintiff,*

    v.

**MICHAEL BARTLEY, et al.,**

    *Defendants.*

**Civil Action No. 16-583**

**OPINION**

---

**THIS MATTER** comes before the Court on Defendants Michael Bartley and Derse, Inc.'s

("Derse") (collectively, "Defendants") motion to dismiss Plaintiff Display Works, LLC's

("Display Works" or "Plaintiff") complaint for lack of personal jurisdiction under Fed. R. Civ. P.

12(b)(2). Dkt. No. 13. Because the Court finds that it has specific jurisdiction over Bartley, but it

does not have personal jurisdiction over Derse, the motion is **GRANTED IN PART** and **DENIED**

**IN PART**.

I.    F<span style="font-variant:small-caps">ACTUAL</span> B<span style="font-variant:small-caps">ACKGROUND</span>

In this suit, Display Works sues its former west coast executive, Michael Bartley, and his

new employer, Derse, for breach of his employment contract, tortious interference, and

defamation. This motion challenges the Court's jurisdiction over Defendants.

Display Works creates customized exhibits for its clients' use at trade shows and marketing

events. Compl. ¶ 1, Dkt. No. 1. It is a Maryland company with a principal place of business in

New Jersey. <u>Id.</u> ¶ 5.

Derse, a Display Works competitor, is incorporated in Wisconsin and has its principal place

of business in Milwaukee. <u>Id.</u> ¶ 7; Beckett Decl. ¶¶ 2-3, Dkt. No. 13-3. It is registered to transact

business in New Jersey and maintains a designated agent for serve of process in the state.  Compl. ¶ 7.

Bartley, a California resident, was Display Works' Vice President of Operations on the West Coast from 2008 to 2016.  Id. ¶¶ 8, 19.  In 2008, Bartley entered into an Employment Agreement which contained an attached Non-Competition, Non-Solicitation, and Non-Disclosure Agreement ("Non-Compete Agreement").  Id. ¶ 14.  Together, in relevant part, the Agreements prohibited Bartley from hiring, soliciting, accepting work from, inducing, or having an interest in any Display Works employees or customers after he left the company.  Id.  The Non-Compete Agreement prohibited Bartley from disclosing the company's confidential proprietary and protected information.  Id. ¶ 15.  The Employment Agreement also prohibited Bartley from making any unfavorable, disparaging, or negative comments about Display Works after his employment ended.  Id. ¶ 16.

During his employment, Bartley operated out of Display Works' California office, but maintained contacts with the New Jersey headquarters in several ways.  He reported directly to Display Works' officers in New Jersey, he e-mailed and engaged in telephone calls with Display Works' New Jersey headquarters thousands of times, he participated in strategy and management meetings via teleconferences with individuals in New Jersey, and, at least on one occasion, he was physically present in New Jersey.  See Bartley Decl. ¶ 32, Dkt. No. 21-2.

On January 7, 2016, Bartley unexpectedly resigned from Display Works.  Compl. ¶ 31.  At the time of his resignation, he was in possession of thumb drives allegedly containing confidential and propriety company information and several personal e-mails containing client information. Id. ¶¶ 37-38.  He never returned them.  Id. ¶ 38.

On January 11th, Display Works received a letter from Derse's attorneys indicating that Bartley began working for Derse and that the covenants imposed in Bartley's Employment and Non-Compete Agreements were "invalid as a matter of law." Id. ¶ 41.

Over the next few weeks, several other Display Works employees resigned and began working for Derse. Id. ¶¶ 42, 47, 52. Display Works also obtained e-mails between Bartley, the other employees, and Derse management discussing ways they could transition their Display Works clients to Derse. Id. ¶¶ 43-46. The e-mails indicated that Bartley and the former employees had contacted several clients. Id. ¶ 48. Display Works then started receiving calls from several concerned clients. See id. ¶ 49. The clients stated that they were told by Derse representatives that Display Works was having financial problems, was near financial insolvency, and its continued presence in the market was questionable, among other negative comments. Id. ¶¶ 49-51.

Display Works alleges that, in the three weeks after Bartley's resignation, five employees left to join Derse, and that Bartley and Derse representatives have approached over two-dozen customers and clients that account for roughly $7 million in sales. Id. ¶ 53.

## II.   PROCEDURAL HISTORY

On February 2, 2016, Display Works filed a complaint alleging causes of action for (1) breach of contract; (2) misappropriation of confidential information and trade secrets; (3) tortious interference with business relations and economic advantage; (4) tortious interference with contract; (5) breach of fiduciary duty; (6) violations of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15; (7) civil conspiracy; (8) violations of the Lanham Act § 43(a)(1), 15 U.S.C. § 1125(a); (9) trade libel and disparagement; and (10) unfair competition.[1]  Dkt. No. 1.  On February 10th,

---

[1] Display Works asserted these claims against Bartley and Derse, except for Counts One (misappropriation) and Five (fiduciary duty), which were only asserted against Bartley, and Count Four (tortious interference), which was only asserted against Derse.

the Court granted Display Works' application for a Temporary Restraining Order ("TRO") and Order to Show Cause, which enjoined Derse and Bartley from soliciting Display Works' customers or employees or divulging any confidential information in anticipation of a preliminary injunction hearing.  Dkt. No. 5.

On February 16th, Defendants filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Dkt. No. 13.  In response, the Court extended the TRO and held a joint hearing on the motion to dismiss and preliminary injunction on February 26th.  See Dkt. No. 24.  Given the Court's inability to resolve the personal jurisdiction motion based on the briefing and affidavits provided, the Court further extended the TRO through March 17th and ordered the parties to engage in expedited jurisdictional discovery.  Dkt. Nos. 38, 53.  The Court held a hearing on March 17th and ordered the restraints on Derse dissolved due to lack of jurisdiction but maintained the restraints on Bartley.  Dkt. No. 75.  The instant opinion expounds upon the Court's reasons as set forth on the record that day.

## III.   APPLICABLE LAW

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over the defendant.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation.  Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  Rather, the plaintiff must "present[ ] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  Id. at 1223.  Once the plaintiff meets this burden, the burden shifts to the defendant to establish the presence of other considerations that would render

4

the exercise of personal jurisdiction unreasonable.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d
141, 150 (3d Cir. 1992).

## IV.  ANALYSIS

A federal court sitting in diversity engages in a two-step inquiry to determine whether it
may exercise personal jurisdiction.  The court must first determine whether the relevant state long-
arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the
exercise of jurisdiction comports with due process.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254,
258–59 (3d Cir. 1998).  New Jersey's long-arm statute extends the state's jurisdictional reach as
far as the United States Constitution permits, so the analysis turns on the federal constitutional
standard for personal jurisdiction.  Id. at 259.

Personal, or in personam, jurisdiction, divides into two groups: "specific jurisdiction" and
"general jurisdiction."  Specific jurisdiction "depends on an affiliatio[n] between the forum and
the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State
and is therefore subject to the State's regulation)."  Walden v. Fiore, 134 S. Ct. 1115, 1121 n.6
(2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011))
(internal quotations omitted). General jurisdiction, on the other hand, "permits a court to assert
jurisdiction over a defendant based on a forum connection unrelated to the underlying suit . . . ."
Id.

Regardless of the court's ability to exercise personal jurisdiction over a defendant, the
defendant may also consent to the court's jurisdiction.  See Burger King Corp. v. Rudzewicz, 471
U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right,
there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent
to the personal jurisdiction of the court.'") (internal citation omitted).  A party that consents to

5

jurisdiction submits itself to the general jurisdiction of the court.  J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) (listing consent as an "example[] that supports exercise of the general jurisdiction of the State's courts and allow the State to resolve both matters that originate with the State and those based on activities and events elsewhere").

Display Works asserts that the Court has either general or specific jurisdiction over Defendants.  Specifically, Display Works argues that general jurisdiction exists over Derse based on the amount of business it does in New Jersey, or, in the alternative, based on Derse's consent to jurisdiction.  Display Works then argues that specific jurisdiction exists over both Derse and Bartley because the claims arise out of their New Jersey contacts.  The Court will address each in turn.

### A.  General Jurisdiction

General jurisdiction is satisfied when the defendants' affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state."  Goodyear, 131 S. Ct. at 2851 (internal citation and quotation marks omitted).  For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business.  Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (internal citations omitted).

Aside from these exemplar bases, general jurisdiction may arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  Id. at 761 n.19.

Here, the Court does not have general jurisdiction over Derse.[2]  Derse was not incorporated in New Jersey and its principal place of business is not in this state.  Nor has Display Works come close to providing evidence that Derse's business activities in this state give rise to general jurisdiction.  It has three employees who work in New Jersey.  Beckett Decl. ¶ 4.  It receives a small amount of its revenue (less than 1%) from business conducted in New Jersey.  Id. ¶ 9.  Derse has also participated in twenty-four trade shows and other marketing events in New Jersey over the past three years.  Gordon Decl. Ex. M., Dkt. No. 63.  These contacts are not so substantial or continuous and systematic as to render it at home in this state.  Therefore, under Daimler's general jurisdiction framework, Derse is not essentially at home in New Jersey.

### B.  Consent to General Jurisdiction

Display Works next argues that the Court can exercise general jurisdiction over Derse based on Derse's consent.  Namely, Display Works argues that Derse has consented to jurisdiction in New Jersey because it is registered to do business in the state, it designated an agent for service of process whom Display Works served in the state, and it engages in business here.  The Court disagrees.

#### 1. Third Circuit Consent-by-Registration Case Law

Of the many ways a party may consent to the exercise of personal jurisdiction, little guidance on consent-by-registration exists in the Third Circuit.  The decision in Bane v. Netlink, Inc., 925 F.2d 637 (3d Cir. 1991), and the principles that emanate therefrom, provide the best

---

[2] For completeness, the Court also notes that it does not have general jurisdiction over Bartley. For an individual, the main bases for general jurisdiction are the person's state of domicile or service of process on the individual in the forum state.  Daimler, 134 S.Ct. at 760; Burnham v. Superior Court of Cal., County of Marin, 495 U.S. 604, 610-11 (1990).  Because Bartley is a California domiciliary and was not served here, Declaration of Scott Cooper ¶ 4, Dkt. No. 26, general jurisdiction over him does not exist.

starting point.  There, an employee sued his former employer, a Delaware corporation with a principal place of business in North Carolina, in the Eastern District of Pennsylvania for discrimination that largely occurred in Massachusetts.  Id. at 638-39.  The District Court granted the corporation's motion to dismiss for lack of personal jurisdiction.  Id. at 639.  The court determined that it did not have specific jurisdiction because the claims did not arise out of the corporation's activities in Pennsylvania and the corporation's contacts with the state were not continuous and systematic enough to confer general jurisdiction.  Id. at 639-40.

On appeal, the Third Circuit reversed.  The reversal, however, did not turn on the District Court's conclusions about specific and general jurisdiction.  The court noted that it need not decide whether there were sufficient contacts "for purposes of the dichotomy between "general" and "specific" jurisdiction."  Id. at 640.  Rather, the court held that the District Court "failed to consider the effect of [the corporation's] application for and receipt of authorization to do business in Pennsylvania . . . [S]uch registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts."  Id.

The holding turned on the "explicit[] state[ment]" of consent in the Pennsylvania registration statute.  Id.  That statute provides:

> (a) General rule—The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person . . . . :
>
> (2) Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
>
> (ii) Consent, to the extent authorized by the consent.
>
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

Id. (citing Pa. Cons. Stat. Ann. § 5301) (emphasis added).  The court found that both subsections (i) and (ii) enabled Pennsylvania courts to exercise general jurisdiction over the corporation, and noted in particular that subsection (ii) "explicitly lists 'consent' as a basis for assertion of jurisdiction over corporations."  Id. at 641.  The court then held that the exercise of jurisdiction was reasonable given the state statute that required the corporation to designate the Secretary of the Commonwealth as agent for service of process.  Id. (internal citation omitted).

Two working principles can be extrapolated from Bane.  First, by registering to do business in a state, a court may find that a corporation consented to personal jurisdiction.  The answer depends on whether the text of the state's registration statute constitutes express consent to jurisdiction.  Second, the consent-by-registration inquiry is separate from the standard "general" and "specific" jurisdiction analysis because the inquiry turns on the statutory text, not the foreign corporation's contacts with the forum state.

## 2. New Jersey Registration and Service Statutes

Applying these principles here, the question is whether compliance with New Jersey's relevant statutory procedures—here, the business registration statutes, N.J.S.A. §§ 14A:13-3(1) and 14A:4-1, the service statute, N.J.S.A. § 14a:4-2, and New Jersey Court Rule 4:4-4(a)(6)—amounts to consent.  The Court holds that it does not because the provisions' texts do not expressly discuss consent or general jurisdiction.

The New Jersey Business Corporation Act, N.J.S.A. § 14A:1-1 et seq., provides the relevant registration and agent appointment statutes.  The New Jersey registration statute requires foreign corporations that wish to transact business in the state to obtain a certificate of authority. N.J.S.A. 14A:13-3(1) ("No foreign corporation shall have the right to transact business in this State until it shall have procured a certificate of authority so to do from the Secretary of State.").  The

corporation must also register an in-state office and agent: "Every corporation organized for any purpose under any general or special law of this State and every foreign corporation authorized to transact business in this State shall continuously maintain a registered office in this State, and a registered agent having a business office identical with such registered office." N.J.S.A. § 14A:4-1(1). The service statute provides that "[e]very registered agent shall be an agent of the corporation which has appointed him, upon whom process against the corporation may be served," but "the provisions of this section shall not exclude any other method provided by law for service of process." N.J.S.A. § 14A:4-2(1), (3). New Jersey's Rules of Court establish the methods of obtaining "in personam" jurisdiction:

> The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State pursuant to R. 4:4-3, as follows . . .
>
> (6) Upon a corporation, by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law

N.J. Ct. R. 4:4-4(6).

Following <u>Bane</u>, two different interpretations of these statutes have emerged in this District. One line of cases found that, despite the difference in wording of the New Jersey and Pennsylvania statutes, companies consented to jurisdiction when they registered to do business in New Jersey and appointed an agent for service of process. See <u>Sadler v. Hallsmith SYSCO Food</u>

Servs., No. 08-4423, 2009 WL 1096309 (D.N.J. Apr. 21, 2009); Otsuka Pharm. Co. v. Mylan Inc.,
106 F. Supp. 3d 456 (D.N.J. 2015) (following Sadler); see also Senju Pharm. Co. v. Metrics, Inc.,
96 F. Supp. 3d 428, 438 (D.N.J. 2015) (same).  The other line of cases recognized New Jersey's
lack of explicit statutory authorization for consent, but found that consent could occur where a
corporation that registered do business in New Jersey was actually doing business here.  See In
Kubin v. Orange Lake Country Club, Inc., No. 101643, 2010 WL 3981908, at *3 (D.N.J. Oct. 8,
2010); Agbottah v. Orange Lake Country Club, No. 12-1019, 2012 WL 2679440, at *3 (D.N.J.
July 6, 2012); McCourt v. AO Smith Water Products Co., No. 14-221, 2015 WL 4997403, at *4
(D.N.J. Aug. 20, 2015) (adopting Kubin's reasoning); see also Atkinson & Mullen Travel Inc. v.
New York Apple Tours Inc., No. 97-4460, 1998 WL 750355, at *2 (D.N.J. Sept. 16, 1998).

Bane compels the Court to find that the New Jersey statutory scheme does not permit
jurisdiction by consent by virtue of registration to do business here or actually doing business here.

### 3. New Jersey's Statutes Do Not Constitute Consent to General Jurisdiction

The statutes' texts cannot be interpreted to constitute consent.  The statutes and court rule
require authorization for a foreign corporation's transaction of business and the maintenance of a
registered office and agent, and describe the manner in which "in personam jurisdiction" can be
obtained over the corporation.  They do not contain express language that registration or the
appointment of an agent constitutes submission to the "general jurisdiction" of New Jersey courts,
do not contain any language intimating that the foreign corporation will be subject to suit in this
state for conduct that occurred elsewhere, and do not discuss consent.  That absence of any such
language distinguishes New Jersey's statutes from those in Bane.

Display Works argues that New Jersey Court Rule 4:4-4(6)'s reference to "in personam
jurisdiction" constitutes an express statement of consent.  The Court disagrees.  The Rule

references jurisdiction, but it does not explain whether it refers to specific or general jurisdiction. It therefore does not expressly inform a foreign corporation that service in the state constitutes submission to general jurisdiction.  Moreover, the Rule explicitly provides that service on the corporation will be valid only if it comports with due process.  N.J. Ct. R. 4:4-4(6) (listing methods of service and explaining caveat "that a foreign corporation may be served only as herein prescribed subject to due process of law").  Were the Court to infer general jurisdiction into the otherwise ambiguous Rule, it would potentially raise serious constitutional issues because such an inference would be inconsistent with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

This Court is not the first to recognize how other states' statutes differ from Pennsylvania's. Comparing Connecticut's registration and service statutes to those in Bane, the Second Circuit recently noted that, in contrast to the Pennsylvania statute's language, the Connecticut statute "gives no notice to a corporation registering to do business in the state that the registration [means submitting to the general jurisdiction of the state courts]."  Brown v. Lockheed Martin Corp., 814 F.3d 619, 637 (2d Cir. 2016) (internal citations omitted).

Both Sadler and Otsuka reached the contrary conclusion by relying on the only New Jersey state court decision interpreting the statutes.  Sadler, 2009 WL 1096309, at *2; Otsuka, 106 F. Supp. 3d at 470.  In Litton Industrial Systems, Inc. v. Kennedy Van Saun Corp., 117 N.J. Super. 52, 283 A.2d 551 (N.J. Super. Ct. Law Div. 1971), the Superior Court of New Jersey found that the statutes constituted consent: "[T]he defendant's designation of an agent for the service of process under N.J.S.A. 14A:4-1 amounted to a consent by defendant to be sued in the state courts of New Jersey, and that service on said authorized representative was reasonable and sufficient

even if it be established that the contract here sued on was unrelated to defendant's New Jersey business activities . . . ." Id. at 61.

Litton is not persuasive.  The court did not base its decision on a close reading of the statutory texts, as Bane did.  In fact, it did not look to the statutory text at all for expressions of general jurisdiction or consent.  The court instead relied on Supreme Court precedent from the first half of last century for the proposition that "the designation of an agent in state for service of process constituted consent to be sued . . . ." Id. (citing Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165 (1939)); see also Otsuka, 106 F. Supp. 3d at 467-68 (explaining the same proposition and citing Neirbo and Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 95 (1917)).

But the sweeping propositions of jurisdictional power in Pennsylvania Fire and Neirbo cannot be squared with the Supreme Court's current statements on jurisdiction in Daimler.[3]  In Pennsylvania Fire, the Supreme Court held that a corporation consented to personal jurisdiction in Missouri by registering and appointing an agent for service under a Missouri statute.  Pa. Fire Ins. Co., 243 U.S. at 95.  Likewise, in Neirbo, the Court held that the defendant corporation waived its right to contest venue in federal court in New York by complying with a New York State statute that required it to designate an agent for service of process.  Neirbo, 308 U.S. at 175.  Taken together, the cases stand for a categorical exercise of jurisdiction based on a corporation's compliance with certain business domestication statutes.

But these decisions developed from an outmoded way of thinking about jurisdiction.  The traditional understanding of jurisdiction was based on a territory—i.e., actions could be brought

---

[3] On this point, we adopt the reasoning recently set forth by the Second Circuit in Brown.  See 814 F.3d at 637-41.

against a defendant only in the jurisdiction in which he or she was found and personally served with process.  See Pennoyer v. Neff, 95 U.S. 714, 722 (1878) ("[N]o State can exercise direct jurisdiction and authority over persons or property without its territory."); 4 Wright, Miller & Kane, Federal Practice & Procedure § 1066 (4th ed. 2010).  The same rule applied whether the defendant was an individual or corporation.  As applied to corporations, the Supreme Court took the rule to mean that corporations could be found only in the state of incorporation.  See Louisville, C. & C.R. Co. v. Letson, 43 U.S. 497, 2 How. 497, 11 L. Ed. 353, 1844 WL 5963 (1844).

The rule had serious practical limitations, however.  Corporations could act outside of the state where they were incorporated, but parties who wanted to sue a corporation in any other state could not do so.  See Moulin v. Trenton Mut. Life & Fire Ins. Co., 25 N.J.L. 57, 61, 1855 WL 4296, at *3 (N.J. 1855) ("If a corporation may sue within a foreign jurisdiction, it would seem consistent with sound principle that it should also be liable to be sued within such jurisdiction. The difficulty is this, that process against a corporation must, at common law, be served upon the principal officer of the corporation within the jurisdiction of that sovereignty by which it was created.").  Faced with this problem, the Supreme Court crafted the "consent" theory.  As Neirbo explained,

> [t]he fact that corporations did do business outside their originating bounds made intolerable their immunity from suit in the states of their activities. And so they were required by legislatures to designate agents for service of process in return for the privilege of doing local business. That service upon such an agent, in conformity with a valid state statute, constituted consent to be sued in the federal court and thereby supplanted the immunity as to venue . . . .

Neirbo, 308 U.S. at 170.  The creation of this "consent" formulation made the holdings in Pennsylvania Fire and Neirbo possible.

But Daimler seriously challenged this formulation.  After explaining Pennoyer, the Daimler Court noted that, "[i]n time, however, that strict territorial approach yielded to a less rigid understanding, spurred by 'changes in the technology of transportation and communication, and the tremendous growth of interstate business activity.'"  Daimer, 134 S.Ct. at 753-54 (quoting Burnham v. Superior Court of Cal.,754 County of Marin, 495 U.S. 604, 617 (1990)).   Instead of looking to the territory in which the defendant could be found, the focus changed to whether the "nonresident corporate defendant [] has 'certain minimum contacts with the forum . . . .'"  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting Int'l Shoe, 326 U.S. at 316); Daimler, 134 S.Ct. at 754 ("Following International Shoe, 'the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of Pennoyer rest, became the central concern of the inquiry into personal jurisdiction.'") (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  From there, the Court established a framework to obtain general jurisdiction over a foreign corporation: "[W]hether that corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum.'"  Daimler, 134 S.Ct. at 761 (quoting Goodyear, 131 S. Ct. at 2851) (internal quotations omitted).  This newer contact-based approach did not need to rely on consent in order to sue foreign corporations.  As such, the Daimler Court warned that citations to cases "decided in the era dominated by Pennoyer's territorial thinking should not attract heavy reliance today."  Id. at 761 n.18; see also Shaffer, 433 U.S. at 213 (noting that "that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny").

This Court, accordingly, finds that the categorical rule of consent explained in Pennsylvania Fire and Neirbo is substantially circumscribed by our reading of more recent

Supreme Court cases.  As the Second Circuit explained, "[t]he sweeping interpretation that a state court gave to a routine registration statute and an accompanying power of attorney that Pennsylvania Fire credited as a general 'consent'" has yielded to the doctrinal refinement reflected in Goodyear and Daimler and the Court's 21st century approach to general and specific jurisdiction in light of expectations created by the continuing expansion of interstate and global business." Brown, 814 F.3d at 639.  The Court agrees with this conclusion.[4]

The alternative is untenable.  Were the Court to follow Litton and its reliance on the Pennoyer-era cases, it would not be able to follow the general jurisdictional structure explained in Daimler.  Litton would permit the Court to exercise general jurisdiction over any corporation that completes the required registration and appointment procedures, regardless of whether the statute expressly discusses general jurisdiction.  Were that so, Daimer's limitation on the exercise of general jurisdiction to those situations where "the corporation is essential at home" would be replaced by a single sweeping rule: registration equals general jurisdiction.  That cannot be the law.

### 4. Consent-by-Registration Analysis Does Not Consider In-State Contacts

Display Works next argues that in addition to registration and service, Derse consented to general jurisdiction because it also engaged in business here.  In support, they rely namely on Kubin v. Orange Lake Country Club, 10 WL 3981908 (D.N.J. Oct. 8, 2010).

---

[4] Based on this conclusion, service of process on Derse's agent in New Jersey does not create jurisdiction.  Under Fed. R. Civ. P. 4(k)(1)(A), service establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Accordingly, since Derse's registration to do business and appointment of an agent do not create general jurisdiction, service on its agent could not establish such jurisdiction.

Kubin reached the same textual conclusion about New Jersey's domestication statutes as this Court does today—that this state's statutes do not have the same reference to general jurisdiction as the Pennsylvania statute did in Bane.  Id. at *3 (While the Pennsylvania statute "listed incorporation under or qualification as a foreign corporation under the laws of this Commonwealth as one of the relationships that shall constitute a sufficient basis of jurisdiction . . . . Bane is easily distinguished, as the relevant New Jersey statute does not have similar language.").  But the court did not end the inquiry there.  It added a requirement that the foreign corporation engage in business in state: "Filing a certificate to do business in New Jersey [is] insufficient to establish general jurisdiction, absent evidence that [defendant] was actually doing business in New Jersey."  Id. (quoting Smith v. S&S Dundalk Eng'g Works, Ltd., 139 F. Supp. 2d 610, 620 n.6 (D.N.J. 2001)).  Under that framework, the court found that it did not have general jurisdiction over the foreign corporation, which registered to do business in New Jersey but only made a few phone calls to the plaintiff in New Jersey to encourage her to buy timeshares.  Id. at *1, 3.

Bane, however, looked only to the statute itself when analyzing consent, and did not consider the corporation's contacts with the state: "[W]e need not decide whether authorization to do business is a continuous and systematic contact with the Commonwealth . . . because such registration by a foreign corporation carries with it consent to be sued."  Bane, 925 F.2d at 640. The proposition that consent depends on business contacts therefore cannot be attributed to Bane or its progeny.[5]

---

[5] None of the relevant state statues connect general jurisdiction or consent to the amount of business a foreign corporation conducts in New Jersey.  Therefore, no statutory basis exists for the argument.

Moreover, consent and contacts are not interdependent.  A defendant with no contact whatsoever to a state may consent to a court's jurisdiction over it.  For example, a defendant may submit to jurisdiction by making an appearance before a court, Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982) (citing McDonald v. Mabee, 243 U.S. 90, 91 (1917)), or by contractually agreeing to jurisdiction, National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964).  If a defendant can consent to jurisdiction without having in-state contacts, such contacts cannot be necessary to consent.

In addition, if consent involved looking to the amount of business transacted in New Jersey, it would risk intrusion into the realm of Daimler's general jurisdiction analysis.  While Daimler acknowledged that a corporation could be subject to general jurisdiction in places other than the place or incorporation and principal place of business, it also noted that a corporation is not subject to general jurisdiction "in every state in which a corporation engages in a substantial, continuous, and systematic course of business . . . A corporation that operates in many places can scarcely be deemed at home in all of them."  134 S.Ct. at 761, 762 n.20.  Relying on business contacts to establish consent jurisdiction would result in just that.  It would vastly expand the number of states where a foreign corporation can be subject to general jurisdiction, even though the corporations are not at "essentially at home" in most, if not all, of them.

The Court holds that New Jersey's registration and service statutes do not constitute consent to general jurisdiction because they do not contain express reference to any such terms. The Court further holds that consent to jurisdiction cannot be found by looking to the amount of business a registered foreign corporation conducts in the state.  Therefore, Derse did not consent to the general jurisdiction in New Jersey.

### C.  Specific Jurisdiction

Display Works next argues that the Court has specific jurisdiction over Derse and Bartley. The Court disagrees as to Derse but agrees as to Bartley.

Unlike general jurisdiction, specific jurisdiction does not require continuous and systematic contact with the forum.  Specific jurisdiction over a defendant exists when that defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  Burger King, 471 U.S. at 472 (internal quotations and citations omitted).  The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." Walden, 134 S. Ct. 1115 at 1121.

This inquiry has three parts: (1) the defendant must have "purposefully directed [its] activities" at the forum; (2) the litigation must "arise out of or relate to" at least one of those activities; and (3) if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

A variation of this test applies when intentional torts are involved.  In that context, "a forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Walden, 134 S. Ct. at 1123.  The method of finding such necessary contact was explained in Calder v. Jones, 465 U.S. 783 (1984).  The so-called "Calder effects test" requires a plaintiff to demonstrate the following:

> (1) the defendant committed an intentional tort;
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered as a result of the tort; and

(3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."

See Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (citing IMO Indus., 155 F.3d at 265-66).

### 1. Derse

The Court does not have specific jurisdiction over Derse.  Display Works identifies the following jurisdictional facts: the solicitation of customers and employees and defamation of Display Works.[6]  These facts concern intentional torts, so the appropriate analysis to determine whether the Court has specific jurisdiction is the Calder effects test.  See IMO Indus., 155 F.3d at 256 ("the question whether personal jurisdiction can be exercised here depends upon the applicability to the facts of Calder. . . ."); Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) ("Under our precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test derived from Calder. . . .").

Because at this stage the Court assumes that Derse committed the alleged intentional torts and because Display Works is a New Jersey company that likely felt the brunt of the harm in New Jersey,[7] this case turns on the third prong of Calder: Whether Derse expressly aimed its conduct at New Jersey such that New Jersey was the focal point of the tortious activity.

---

[6] Though Display Works points to other business contacts that Derse had in New Jersey—providing materials for conferences, employing a few people, and making some revenue there—none of the claims in this case stem from those contacts.  As such, the conventional International Shoe analysis for personal jurisdiction does not provide jurisdiction over Derse in this case.  Calder controls.

[7] Whether the evidence ultimately will support this presence, however, is not clear.  While Plaintiff is a New Jersey company, the solicited employees came from its west coast division, based in California.  The customers taken are based around the nation, many in California, and none in New Jersey.  The harm to company operations appears to have occurred primarily in California.  The harm to corporate profits, therefore, is the only strong factor indicating that New Jersey is the focal point of the harm.  Though some courts have found such corporate profits to be sufficient to establish the focal point of the harm, see Lawn Doctor, Inc. v. Branon, No. 07-4735, 2008 WL

It did not.  The alleged conduct in this case was threefold: Soliciting a variety of customers, soliciting some employees, and defaming Display Works.  However, none of the customers solicited have principal places of business in or were incorporated in New Jersey.  None of the employees taken were New Jersey employees.  No defamatory statements were made in New Jersey.  Therefore, Display Works has not presented sufficient evidence that Derse purposefully directed its conduct at the forum state.

Display Works argues that purposefully interfering with its employees and customers necessarily constitutes targeting the forum because Display Works' is located in New Jersey.  That argument was directly rejected by the Third Circuit in IMO Indus., Inc. v. Kiekert AG, where the Court noted "[w]hile knowledge that the plaintiff is located in the forum is necessary to the application of Calder . . . it alone is insufficient to satisfy the targeting prong of the effects test." 155 F.3d at 266.

Display Works also argues that several of the customers which were solicited had some presence in the New Jersey and attended trade shows in the state, so soliciting these customers is tantamount to targeting New Jersey.  See Second Lacamera Decl. ¶¶ 14, 17, Dkt. No. 29; see generally Third Lacamera Decl., Dkt. No. 65.  This argument overreaches.  Display Works must show that "defendant expressly aimed its tortious conduct at the forum."  Marten, 499 F.3d at 298. Exerting jurisdiction over connections as tenuous as those here—i.e. soliciting outside of the forum a customer who operates some facilities or does some business in the forum—would create nationwide jurisdiction over customer solicitation cases involving large companies, an outcome with no basis in law or common sense.  An excellent example is provided by Display Works itself;

---

2064477, at *5 (D.N.J. May 14, 2008), the Court does not rule on that question here, relying instead upon the plainly inadequate proof under the third prong of Calder.

it claims that solicitation of Aston-Martin constitutes reaching out to New Jersey because Aston-Martin has a dealership here.  See Third Lacamera Decl. ¶ 12.  So do any number of other car companies.  But the presence of dealerships does not turn solicitation of a car company as a client into purposeful availment of every state in the United States.

The Calder effects test is not met; there is no specific jurisdiction over Derse.

### 2. Bartley

The Court finds that it has specific jurisdiction over Bartley, however.[8]  Although Bartley was located in California, he maintained frequent contact with New Jersey.  He attended regular meetings held in New Jersey by teleconference, participated in strategic discussions concerning critical business affairs, and was involved in all aspects of the decision making process for Display Works; he had interactions with Display Work's New Jersey employees, to whom he sent numerous emails and placed phone calls; and he worked with senior personnel in the New Jersey office. Compl. ¶ 21; Second Lacamera Decl. ¶ 10.  Bartley also had contact with two of Display Works' owner/officers—Mike Fernandez and Nick Lacamera—with whom he collaborated on major operational business issues.  Compl. ¶ 22.  He sent, received, or was copied on numerous e-mails with Fernandez and Lacamera; he assisted them in a company-wide commissions rollout and communicated via e-mail about adjusting the company's pricing model; and worked with them to ensure that a certain employee signed a non-compete agreement.  Second Lacamera Decl. ¶¶ 7, 9, 12-13.  Bartley also communicated frequently with Display Works' VP of Operations who works in the New Jersey office.  Saltalamacchia Decl. ¶¶ 1, 5, Dkt. No. 60-6.  Importantly, while Bartley contests the magnitude of these contacts, he does not contest that they occurred.  See, e.g., Supp.

---

[8] Because the claims against Bartley involve both negligence and intentional torts, the Court will first apply the standard three-prong test, not the Calder effects test, to determine if it has specific jurisdiction over him.

Bartley Decl. ¶ 15, Dkt. No. 36-1 (denying daily contact with Fernandez but stating that contact occurred every few weeks).

These activities were not fortuitous contacts with New Jersey.  Bartley purposefully and continuously conducted these activities and targeted them at the state.[9]  Bartley's argument that he was not physically present in New Jersey is also immaterial.  "Physical presence in the forum is not a prerequisite to jurisdiction . . . [P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means is a relevant contact."  Walden, 134 S.Ct. at 1122.

Second, the litigation arises out of or directly relates to his employment.  Plaintiff alleges that Bartley used these contacts to steal clients, employees, and defame Plaintiff's business.

Third, given Bartley's continuous contacts with New Jersey, there is no doubt that he should have anticipated that he could be sued here.  The exercise of jurisdiction over him therefore is fair and just.

## V.    CONCLUSION

For the reasons set forth herein, Defendants motion to dismiss for lack of personal jurisdiction, Dkt. No. 13, is **GRANTED** as to Derse and **DENIED** as to Bartley.

**Dated: April 25, 2016**

*/s Madeline Cox Arleo*_____
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[9] Defendants' reliance on Dailight v. Allen is unpersuasive.  No. 15-1090, 2015 WL 5996287 (D.N.J. Oct. 14, 2015).  There, the court found that an out-of-state employee's contacts with New Jersey did not give rise to specific jurisdiction where the contacts were rare visits to the state and access of computer servers located here.  Id. at *2.  Here, Bartley's contacts with New Jersey are far more substantial.